**UNITED STATES of America, Plaintiff,**

v.

**1. EXECUTIVE RECYCLING, INC., 2. Brandon Richter, and 3. Tor Olson, Defendants.**

**Criminal Case No. 11–cr–00376–WJM.**

United States District Court, D. Colorado.

Dec. 11, 2012.

Lillian Louisa Alves, Suneeta Hazra, U.S. Attorney's Office, Denver, CO, for Plaintiff.

Cleo J. Rauchway, Pamela Robillard Mackey, Haddon, Morgan & Foreman, P.C., Lucy Deakins Arnold, William J. Leone, Fulbright & Jaworski, LLP, Denver, CO, for Defendants.

## ORDER DENYING COUNSEL FOR EXECUTIVE RECYCLING AND BRANDON RICHTER'S MOTION TO WITHDRAW

WILLIAM J. MARTÍNEZ, District Judge.

Before the Court is Attorneys Pamela Mackey and Cleo Rauchway's Motion to Withdraw ("Motion"). (ECF No. 250.) As stated on the record, and for the reasons set forth below, the Court denies the Motion.

### I. FACTUAL BACKGROUND

In this action, the Government charges Executive Recycling, Brandon Richter, and Tor Olson with one count charging a violation of the Resource Conversation and Recovery Act ("RCRA") (42 U.S.C. § 6928(d)(4)), one count of smuggling (18 U.S.C. § 554), eleven counts of wire fraud (18 U.S.C. § 1343), two counts of mail fraud (18 U.S.C. § 1341), and one count of obstruction of justice (18 U.S.C. § 1519). (ECF No. 1.) In short, the Government charges that Defendants (1) illegally transported and exported a shipment of electronic waste that included cathode ray tubes ("CRTs") containing lead; (2) falsely represented to various businesses and government entities in Colorado that Defendants would dispose of the entities' electronic waste in an environmentally friendly manner and in compliance with all applicable local, state, and federal laws and regulations; and (3) knowingly altered, destroyed, mutilated or concealed evidence with the intent to impede the Government's investigation of them. (*Id.*)

Defendants Executive Recycling and Brandon Richter retained attorney Pamela Mackey to represent them.[1] (ECF No. 10.) Defendant Tor Olson retained attorney William Leone.[2] (ECF No. 11.) These attorneys have continued to represent the same clients throughout this case and are currently representing the same clients.

In October 2011, Defendants entered into a Joint Defense Agreement ("JDA"). (ECF No. 246–1[3].) The JDA provided that materials shared between counsel would remain subject to attorney-client, work-product, and other applicable privileges. (*Id.*) The JDA allowed any party to withdraw upon notification to all other signatories and, upon withdrawal, all communications and information covered by the JDA and disclosed to the withdrawing party prior to the party's notification of withdrawal would remain confidential. (*Id.*)

After a lengthy discovery process and a hard fought pre-trial motions practice, a jury trial commenced on December 3, 2012. (ECF No. 239.) On the afternoon of the fourth day of trial, the Government

---

1. The Court notes that attorney Cleo Rauchway later entered an appearance on behalf of Executive Recycling and has been Ms. Mackey's co-counsel throughout these proceedings. For clarity purposes, the Court refers only to Ms. Mackey as counsel for Executive Recycling and Brandon Richter. However, the Court's analysis with respect to Ms. Mackey applies equally to Ms. Rauchway.

2. Attorney Lucy Deakins also represents Mr. Olson. However, for the sake of brevity, the Court will refer only to Mr. Leone as counsel for Mr. Olson.

3. The Joint Defense Agreement was filed under restriction and, therefore, the Court will paraphrase its contents rather than directly quoting therefrom.

introduced Exhibit 14.18, which is a series of invoices created by Executive Recycling's accounting program. An employee of Executive Recycling testified that it appeared one portion of Exhibit 14.18 had been altered as the invoice number was out of sequence. Exhibit 14.18 is the invoice for the shipment charged in Counts 14 and 15 of the Indictment.

On morning of the fifth day of trial, defense counsel requested an *ex parte* hearing with the Court to discuss an ethical issue. The merits of the ethical issue were resolved by the Court and are not germane here. However, during this *ex parte* discussion, Ms. Mackey orally moved to sever this action on behalf of her clients. The Motion to Sever was joined by Defendant Olson. The basis for the Motion to Sever was that, if the Government was going to pursue a theory that invoices had been altered or manipulated, it would place Defendants Richter and Olson at odds with each other because only a limited number of employees at Executive Recycling had access to the company's accounting software. (ECF No. 245 at 2–3.) As Defendant Olson alleged in his later briefing: "the Defendants may be forced into a position where they have no choice but to claim that neither of them altered the accounting record in question, and to cross examine the other, if he testifies, about that defendant's motive and opportunity to have performed the action in question." (*Id.* at 3.)

At the same time they filed their brief on the Motion to Sever, Defendants Executive Recycling and Brandon Richter filed a Motion to Withdraw. In the Motion to Withdraw, Defendants allege that Ms. Mackey received information on the morning of the fifth day of trial, from Defendant Olson and/or his counsel in accordance with their JDA, that has lead her to conclude that she has a conflict of interest which interferes with her ability to continue to represent her clients in this case. Defendants Richter and Olson withdrew from the JDA as of the morning of the fifth day of trial. .

The Court denied the Motion to Sever based on its finding that Defendants had failed to show mutually antagonistic defenses. ' Trial continued into the sixth day and, after the jury was sent home, the Court heard argument from the parties on the Motion to Withdraw. A portion of this argument was conducted outside the presence of counsel for the Government so as to allow defense counsel the opportunity to raise issues *ex parte*. However, the Government was permitted to make its own argument and also permitted to file supplemental briefing.

On the morning of the seventh day of trial, the Court heard additional argument on the Motion to Withdraw. Following this argument, the Court informed the parties that it was denying the Motion to Withdraw. The purpose of this Order is to set forth the Court's rationale behind this decision.

## II. ANALYSIS

■ The conflict at issue here arises out of the JDA entered into by defense counsel. This Court has described the "joint defense privilege" as follows:

> The joint defense privilege preserves the confidentiality of communications and information exchanged between two or more parties and their counsel who are engaged in a joint defense effort. Waiver of the joint defense privilege requires the consent of all parties participating in the joint defense. [T]he joint defense privilege is merely an extension of the attorney-client privilege and the work-product doctrine.

*Static Control Components, Inc. v. Lexmark Intern.*, 250 F.R.D. 575, 578 (D.Colo. 2007). A joint defense agreement does not create an attorney-client relationship be-

tween an attorney and the co-defendant. *United States v. Stepney*, 246 F.Supp.2d 1069, 1080 (N.D.Cal.2003). Thus, an attorney owes no duty of loyalty to her client's co-defendant. *United States v. Almeida*, 341 F.3d 1318, 1323 (11th Cir.2003). However, an attorney who learns confidential or privileged information as a result of a JDA has a duty to maintain the confidentiality of such information, even after the JDA is no longer in force. *United States v. Gonzalez*, 669 F.3d 974, 982 (9th Cir. 2012).

 A defendant's Sixth Amendment right to counsel includes "the right to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *United States v. Winkle*, 722 F.2d 605, 609 (10th Cir.1983). "The constitutional standard for attorney performance is that of reasonably effective assistance . . . which we have defined as the 'exercise [of] the skill, judgment and diligence of a reasonably competent defense attorney.'" *United States v. Burney*, 756 F.2d 787, 790 (10th Cir.1985) (quoting *Dyer v. Crisp*, 613 F.2d 275, 278 (10th Cir.1980)). This right to effective assistance of counsel includes the right to counsel free from conflicts of interest. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. However, if the Court is satisfied that a conflict does not risk compromising the defendant's representation, it need not require substitution of counsel. *See United States v. Solomon*, 42 Fed.Appx. 88, 91 (10th Cir.2002).

At argument on the Motion, Ms. Mackey acknowledged that she owed no duty of loyalty to Mr. Olson. However, she maintains that her ability to effectively represent her clients would be so impaired by information that she gained under the JDA that she is compelled to withdraw. Ms. Mackey has explained her position to her clients and they have "reluctantly agreed" to her Motion to Withdraw.

## A. Actual Conflict of Interest

 To succeed on the Motion to Withdraw, counsel must show an actual conflict of interest that detrimentally affects her ability to represent her client. *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. Ms. Mackey contends that her conflict arises out of confidential information that she learned during the JDA. Essentially, Ms. Mackey contends that she cannot effectively represent her clients because she knows confidential information about co-Defendant Olson and, if he chooses to testify, she will not be permitted to examine him about this information.[4]

The Tenth Circuit has yet to address a case with facts such as those present here. However, in a similar action, the Eleventh Circuit held that "[t]he mere inability to utilize the privileged communication is not itself a manifestation of a conflict of interest, because no lawyer in the world could utilize those communications." *Almeida*, 341 F.3d at 1323. The Court agrees with *Almeida's* rationale and finds that the facts presented here do not rise to the level of an actual conflict of interest. If the Court were to grant the Motion to Withdraw, Defendant Richter's and Executive Recycling's new counsel would likewise be unable to examine Mr. Olson about any confidential information. Indeed, new counsel would not likely have access to such confidential information. Therefore, as the Government contends, if anything,

---

4. Ms. Mackey has also alleged that her examination of one other witness may be impacted by the confidential information that she gained during the JDA. However, Ms. Mackey stated only that she would structure her argument differently given the confidential information that she is now aware of. She did not indicate that her ability to examine the witness would be detrimentally impacted. Accordingly, the Court will limit the conflict in this case to only Mr. Olson's supposed testimony.

new counsel would be less able to provide an adequate defense for Mr. Richter and Executive Recycling. Thus, the Court fails to see how Mr. Richter and Executive Recycling are prejudiced by Ms. Mackey's continued representation of them.

Pursuant to *Almeida*, the Court finds that Ms. Mackey has failed to show an actual conflict of interest in this case. This fact alone is reason to deny the Motion to Withdraw. *See Cuyler v. Sullivan*, 446 U.S. 335, 348, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980) (defendant must show an "actual conflict of interest" which "adversely affected his lawyer's performance" to warrant substitution of counsel).

## B. *United States v. Henke*, 222 F.3d 633 (9th Cir.2000)

Defendants Richter and Executive Recycling argue that this Court should follow the reasoning in *United States v. Henke*, 222 F.3d 633 (9th Cir.2000) and find that the conflict of interest here necessitates withdrawal of counsel. In *Henke*, three co-defendants were indicted together and their attorneys entered into a JDA. 222 F.3d at 636. Shortly before trial, one defendant pled guilty and agreed to testify at trial on behalf of the government. The cooperating defendant's attorney sent a letter to counsel for the remaining defendants that specifically invoked the cooperating defendant's privilege with respect to all information learned during joint defense strategy sessions. *Id.* at 638. The cooperating defendant's attorney threatened legal action if the remaining defendants' attorneys did not adequately protect the privilege. *Id.*

Counsel for the remaining defendants moved to withdraw and argued that they could not effectively represent their clients because they would not be able to adequately cross-examine the cooperating defendant. The district court denied the motion to withdraw. *Id.* at 637. At trial,

the cooperating defendant's testimony was inconsistent with what he had said in confidence during pre-trial joint defense meetings. *Id.* at 638. Defense counsel conducted no cross-examination for fear that the examination would lead to inquiries into material covered by the joint defense agreement. The Ninth Circuit held that it was error to deny the motions to withdraw. *Id.*

Defendants Richter and Executive Recycling argue that, based on *Henke*, it would be error for the Court to refuse to allow Ms. Mackey to withdraw as counsel. For the reasons explained below, the Court finds not only that *Henke* is readily distinguishable from the facts of this case, but also that the factors considered in *Henke* actually lead the Court to conclude that the Motion to Withdraw should be denied.

### 1. *Government's role in procuring the conflict*

■ The Ninth Circuit was compelled by the fact that the government was, in that case, receiving a significant benefit from the testimony of the cooperating defendant: "By choosing to convert [the cooperating defendant] into a prospective witness shortly before the trial was scheduled to start, the government ... caused this problem, and should not now be heard to complain." *Id.* at 638. In this case, the Government has done nothing to encourage or bring about the supposed conflict. The Government did not engage Mr. Olson to cooperate against Mr. Richter or Executive Recycling, and the Government will receive little, if any, benefit should Mr. Olson choose to testify on his own behalf. The Court finds that this fact is a significant reason for distinguishing this case from *Henke* and supports the Court's conclusion that the Motion should be denied.

### 2. *Severity of the alleged conflict*

The Court finds that the severity of the alleged conflict at issue here is much less

significant than the conflict in *Henke*. There, the conflict (coupled with the cooperating defendant's counsel's threatening letter) caused counsel for the remaining defendants to decline to conduct *any* cross-examination of the testifying co-defendant. As the cooperating defendant was a key witness in the government's case, the failure to cross-examine such witness caused the remaining defendants significant prejudice. *Henke*, 222 F.3d at 638.

In this case, should Mr. Olson choose to testify, he will be testifying on his own behalf and not on behalf of the Government. Aside from the obstruction of justice count, there has been no indication that Defendants' interests are adverse to each other. Therefore, the extent to which Mr. Olson's testimony will be adverse to Mr. Richter or Executive Recycling is far less significant than the cooperating defendant in *Henke*. Moreover, given the limited nature of the conflict alleged here, the Court has a hard time believing that Ms. Mackey will be wholly unable to examine Mr. Olson, should he choose to take the stand. Thus, the Court finds that the conflict alleged here is not so significant that it warrants allowing counsel to withdraw. *See Barham v. United States*, 724 F.2d 1529 (11th Cir. 1984) (where conflict of interest affected only one witness's cross-examination, it was deemed so insignificant that it did not effect counsel's ability to provide adequate representation).

Rather than lead the Court to conclude that the Motion to Withdraw should be granted, the Court finds that *Henke* actually suggests that the Motion should be denied. The Ninth Circuit stated: "There may be cases in which defense counsel's possession of information about a former co-defendant/government witness learned through joint defense meetings will not impair defense counsel's ability to represent the defendant or breach the duty of confidentiality to the former co-defendant." *Id.* at 638; *see also Almeida*, 341 F.3d at 1323 (where a conflict arising out of confidential information learned as a result of a JDA is *"de minimis"* it may not interfere with counsel's ability to provide effective representation). The Court finds that, to the extent there is any actual conflict of interest, it is so minimal that it will not affect Counsel's ability to adequately represent her clients' interests.

The Court acknowledges that the Supreme Court has held that the attorney "is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Holloway v. Arkansas*, 435 U.S. 475, 485, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). However, the majority of cases discussing this principle involve an attorney who owes a duty of loyalty to two clients whose interests are adverse. In this case, Ms. Mackey owes no duty of loyalty to Mr. Olson, and Mr. Olson's interests are not, for the most part, adverse to her clients. Also, most cases discussing this principle are addressing a motion to withdraw or a motion to disqualify an attorney early on in a case, or certainly before trial has commenced. At this point in these proceedings, the Court has presided over six days of trial testimony and reviewed innumerable legal issues that have arisen both before and during trial. The Court has a solid grasp of the legal issues governing this case, the Government's theory of the case, and the defenses proffered by the Defendants. Thus, more so than in a typical case, the Court is well positioned to judge the extent to which the conflict alleged here will affect counsel's ability to represent her clients.[5]

---

**5.** The Court also notes that Mr. Leone, counsel for Mr. Olson, is subject to the same

### 3. *Equitable Considerations*

Finally, the Court finds that the timing of the Motion to Withdraw and the circumstances surrounding the Motion distinguish this action from *Henke*. In that case, defense counsel moved to withdraw as soon as the co-defendant began cooperating with the government and before trial started. The *Henke* court noted that there was "nothing in the record to suggest that the attorneys [in making the motion to withdraw] were doing anything other than attempting to adhere to their ethical duties as lawyers." 222 F.3d at 638. The Court cannot say the same here.

This case has been pending for over a year and the charges have been unchanged since the Grand Jury handed down the Indictment. This case was indicted as a fraudulent scheme perpetrated by the President and Vice–President of a corporation. Given the nature of these charges and the relationship between the Defendants, it should not have come as a surprise that there was a potential for conflict. Yet, despite this potential, Defendants and their Counsel made a tactical decision to enter into a JDA. Given the experience of Defense Counsel in this case, the Court has a hard time believing that Counsel was unaware that the JDA could result in the precise conflict at issue here.

Moreover, the Court fails to see how the testimony that occurred on the fourth day of trial could have so suddenly created the alleged conflict.[6] The Government produced all discovery, including the invoices contained in Exhibit 14.18, nearly a year before trial commenced. The Government also disclosed its trial exhibits to Defendants nearly two weeks before trial. A close examination of the invoices contained in Exhibit 14.18 would have revealed to the Defendants that the Government was going to pursue a theory of alteration or manipulation of documents, as they had explicitly charged in Count 16 of the Indictment. Thus, Counsel should have, or at least easily could have, known of the conflict alleged here before trial started, and yet failed to raise any issue of effective representation with the Court. *See United States v. Martinez*, 455 F.3d 1127, 1130 n. 2 (10th Cir.2006) (noting that a party should not wait to raise an issue with the court "until the only meaningful remedy would be a mistrial" because a mistrial is a "drastic sanction").

The Government has vehemently argued that Defense Counsel should not be permitted to engineer a conflict at this late stage in the game and then benefit from the same conflict. The Court agrees. Defendants and their Counsel made a tactical decision to enter into a JDA and, while it was advantageous for them, continued to operate within the confines of the JDA. On the fifth day of trial, after the Government offered evidence to prove its case precisely as it was alleged in the Indictment, the JDA suddenly became a detriment to Counsel such that it prompted her to make a motion to withdraw. The Court cannot permit Counsel to use the JDA as both a

---

ethical obligation to maintain the confidentiality of communications learned under the now-defunct JDA. However, upon questioning by the Court, Mr. Leone represented that he believed he could continue to represent Mr. Olson, despite the confidential information he gained while the JDA was in place. This also signals that the alleged conflict is not so significant that the Court must permit Ms. Mackey to withdraw.

**6.** The Court notes that the alleged conflict arose out of one witness's testimony with respect to one exhibit. In the context of a case of this scope—with hundreds of exhibits, dozens of witnesses, and a trial scheduled for 13 days—it is difficult to see how one exhibit and examination of one witness could create such a significant conflict so as to require the Court to find that Counsel cannot provide constitutionally sufficient representation of her clients.

sword and a shield. *See United States v. Bilzerian,* 926 F.2d 1285, 1292 (2d Cir. 1991) (court should not permit privilege to be used as a sword and a shield).

The Court does not mean to suggest that the Motion to Withdraw is brought in bad faith or that Defense Counsel has been less than forthcoming with the Court. It is obvious that Counsel struggled with the decision to bring the Motion to Withdraw. However, the Court cannot say that Defense Counsel guarded against a conflict of interest and the Court cannot turn a blind eye to the fact that Defendants and their Counsel are the sole cause of the alleged conflict here. In contrast to the cases cited by Defendants, the Government here has done nothing to bring about alleged conflict. The Government has been diligently presenting its case, marching through witness after witness and document after document. Only after the Government has revealed nearly its entire hand do Defendants come forward with a conflict that could have been predicted at the outset of this case. The Court is concerned that, if it allows defense counsel to withdraw in this case, when the conflict alleged is so minor and impacts such a small portion of the case, then any multi-defendant case in which the parties have entered into a JDA could be suddenly derailed by a "surprise" conflict of interest on the part of defense counsel which materializes in the middle of trial. Such a development would, of course, be to the great cost, delay, and inconvenience of both the Government and the Court.

The Court recognizes that Defense Counsel are in an awkward situation now that the JDA has been dissolved. However, this situation is one of their own cre-

ation. The Supreme Court has recognized that, where the equities weigh against allowing counsel to withdraw, the Court is justified in denying the request for new counsel. *See Holloway v. Arkansas,* 435 U.S. 475, 486–87, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978) ("When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics.")

Given the lack of a significant conflict here, the advanced nature of these proceedings, the lack of culpability on the part of the Government with respect to bringing about the alleged conflict, and the prejudice that the Government would suffer if the Court were to allow Ms. Mackey to withdraw at this juncture,[7] the Court concludes that the Motion to Withdraw must be denied. The Court is confident that an attorney of Ms. Mackey's caliber will be able to effectively represent her clients despite her ethical duty to maintain the confidentiality of the privileged information that she obtained during the JDA.

### III. CONCLUSION

For the reasons set forth above, Defendant Brandon Richter and Executive Recycling's Motion to Withdraw (ECF No. 250) is DENIED.

---

7. At argument on the Motion, the parties were in agreement that, if the Court permits Ms. Mackey to withdraw, it should declare a mistrial and convene a new jury to retry this action after new counsel has had adequate time to prepare. As the Government presented well over three-quarters of its case at this point, the Government would be significantly prejudiced by having to start over.